In re John ASTERS and Phillis Asters, Debtors.

John ASTERS, Plaintiff,

v.

WEBBER CHEVROLET CO., Defendant.

Bankruptcy No. 79–00477.

United States Bankruptcy Court,
D. Rhode Island.

June 4, 1981.

Joseph R. DeCiantis, Providence, R. I., for plaintiff.

G. John Gazerro, Jr., West Warwick, R. I., for defendant.

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on the Debtor's complaint to adjudge Webber Chevrolet, Inc. in contempt for violation of the automatic stay, 11 U.S.C. § 362; 28 U.S.C. § 1481.[1] The facts which precipitated this controversy are summarized as follows:

In August, 1979, John Asters executed an installment sales contract and a security agreement covering a 1979 Chevrolet which he purchased from Webber Chevrolet. Webber then assigned the contract and security agreement to General Motors Acceptance Corporation. On December 20, 1979 Asters filed a Chapter 13 petition in this Court, and the commencement of that proceeding invoked § 362,[2] effectuating a stay of action by creditors, including Webber.

---

1. 28 U.S.C. § 1481 provides that "[a] bankruptcy court shall have the powers of a court of equity...." P.L. 95–598, Title II, § 241(a), 92 Stat. 2671 (The Bankruptcy Reform Act of 1978). Section 402(b) of the Act states that "[e]xcept as provided in subsections (c) and (d) this Act shall take effect on April 1, 1984." Neither subsection (c) nor (d) exempts § 241 from this effective date.

However, § 405(b) of the same Act provides that § 241 shall be effective during the October 1, 1979 to March 30, 1984 transition period.

Sections 402(b) and 405(b) are in apparent conflict as to the effective date of § 241(a) of the Act. It is a general rule of statutory construction that a specific provision controls a conflicting general provision in the same statute. 73 Am.Jur.2d, Statutes, § 257 (1974); United States v. Cihal, 336 F.Supp. 261 (W.D. Pa.1972).

Therefore, § 405(b), being more specific than § 402(b), should prevail. Section 241(a) (28 U.S.C. § 1481) is applicable to the present motion.

2. Section 362 provides that

In February, 1980, during the pendency of the Chapter 13 proceeding, Asters installed a $450 stereo system in the vehicle in question. On March 14, 1980, after Asters had defaulted on his loan, this Court authorized GMAC to reclaim the car, which it did, and in accordance with its repurchase agreement with the dealer, GMAC turned the vehicle over to Webber Chevrolet. Asters claimed the stereo as his property and informed Webber that the stereo was not covered by the security agreement, but despite demands made on both GMAC and Webber for its return, the automobile, together with the stereo, was sold to a Texas purchaser. The present location of the car and the stereo is unknown. As a defense to this action, Webber asserts that the stereo in question was covered by the security agreement, and therefore its disposition of this item was not improper.

R.I.Gen.Laws § 6A-9-203(1)(a) (1980 Supp.) provides that an agreement is necessary for a security interest in chattels to attach. Similarly, R.I.Gen.Laws § 6A-9-201 (1970) states that "a security agreement is effective according to its terms between the parties." In the case at bar, the evidence is clear that the stereo was installed in Asters' car in February, 1980, long after the date of the security agreement which does not contain an after-acquired property clause. Webber Chevrolet, as the seller of the car, was aware of or should have had knowledge that the stereo was not in the vehicle when it was sold to Asters and that its security interest did not attach to the stereo. Even if, initially, Webber was unaware that a non-factory stereo system had been installed, the demand for its return by Asters was sufficient to put Webber on notice of the claim that it had been installed *after* Asters purchased the car, or at least that there was uncertainty as to the ownership of the stereo.

■ Webber *argues* that the stereo in question was probably a replacement for the factory radio and that GMAC's security interest attached to the stereo for that reason, but offers no evidence to support this contention. The testimony of Asters (which I believe), that the original factory radio was removed at his request prior to purchasing the automobile, refutes that argument, in any event. Accordingly, the Court finds as a fact and concludes as a matter of law that Webber's security interest at no time attached to the stereo system in question.

Webber also argues that it is not the proper party to this proceeding, since it had assigned its interest to GMAC, and therefore did not have legal access to the subject property after the repossession. I am not impressed with, nor persuaded by the argument that because of the assignment Webber did not have *legal* access to the vehicle in question. The evidence is conclusive that Webber had physical possession of and control over the vehicle and its contents at all times relevant to this proceeding, and Webber's contractual relationship with GMAC has nothing to do with the conduct of the Defendant with respect to Asters, which is the issue here. The disposition of Asters' property by Webber was the result of its complete disregard of Asters' rights, after plenty of notice.

■ Notwithstanding Webber's alleged concern about possible liability to GMAC in the event it did not include the stereo when liquidating the car, it was incumbent on Webber to exercise reasonable care and diligence concerning the disposition of the equipment in question. In plain disregard of the asserted rights of Asters in the property, and ignoring his protestations, Webber chose its course and disposed of the car, stereo and all, and cannot now avoid responsibility for its acts by asserting that it made the wrong choice as between two claimants to the property. Webber had the duty to make a reasonable inquiry as to the

a petition filed under ... this title operates as a stay, applicable to all entities, of

.    .    .    .    .

(5) any act to create, perfect, or enforce against property of the debtor any lien to the

extent that such lien secures a claim that arose before the commencement of the case under this title.

status of the stereo, based on Asters' claim of ownership to it. Had Webber taken the time and trouble to make such inquiry, and then embarked on what eventually proved to be the incorrect decision, this might have resulted in ordinary civil liability, or no negligence at all, but the element of reckless disregard which presently subjects Webber to contempt sanctions would not have been present. In any event, Webber chose to make no such inquiry.

In the circumstances of this case, I conclude that the Webber willfully violated the provisions of Section 362, and is in contempt of the automatic stay. Since Asters has been wrongfully deprived of his stereo, compensatory damages in the amount of $450, the value of the property, are assessed against Webber.[3] The willful violation of the automatic stay and the attendant need for Asters to bring this action make this an appropriate case for the awarding of punitive damages. *See, Northern v. McGraw-Edison Co.*, 542 F.2d 1336 (8th Cir. 1976), *cert. den.*, 429 U.S. 1097, 97 S.Ct. 1115, 51 L.Ed.2d 544 (1976); *Cordeco Development Corp. v. Santiago Vasquez*, 539 F.2d 256 (1st Cir. 1976), *cert. den.*, 429 U.S. 978, 97 S.Ct. 488, 50 L.Ed.2d 586 (1976). Considering Webber's conduct and actions, in context, upon a review of the entire record in this case, punitive damages are awarded to Asters in the amount of $1,000.[4]

**3.** Asters' complaint does not request compensatory damages, however Rule 54(c) of the Federal Rules of Civil Procedure, made applicable to bankruptcy proceeding by Bankruptcy Rule 754, provides that: "Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings."

**4.** Although the willful conduct of Webber also seems to make this case an appropriate one for the assessment of attorney fees, *see, Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258–59, 95 S.Ct. 1612, 1622–23, 44 L.Ed.2d 141 (1975), this Court is constrained by the holding in *Cordeco Development Corp., supra*, that punitive damages are "a more precise measure of a defendant's wrongful conduct than an award of fees, and to the extent that an award of fees under the 'bad faith' exception is punitive, [an] award of both fees and punitive damages for conduct giving rise to the lawsuit constitutes double punishment for such action." *Id.* at 263, 95 S.Ct. at 1624. (citations omitted). *See also, Public Finance Corp. of Rhode Island v. Walker*, 7 B.R. 216, 222–23 (Bkrtcy.D.R.I.1980).