**In re Ervin Junior STACY Brenda Lawson Stacy, Debtors.**

**Ervin Junior STACY, Plaintiff,**

**v.**

**ROANOKE MEMORIAL HOSPITALS and Financial Management Services, Inc., Defendants.**

**In re Elizabeth Mae FITZGERALD, Debtor.**

**Elizabeth Mae FITZGERALD, Plaintiff,**

**v.**

**ROANOKE MEMORIAL HOSPITALS and Credit Bureau of New River Valley, Defendants.**

**Bankruptcy Nos. 7–80–01347, 7–81–00271. Adv. Nos. 7–81–0048, 7–81–0186.**

United States Bankruptcy Court, W. D. Virginia, Roanoke Division.

March 1, 1982.

Alan T. Gravitt, The Legal Aid Society of Roanoke Valley, Roanoke, Va., for debtors/plaintiffs.

Donald C. Gehring, Hazlegrove, Dickinson & Rea, Roanoke, Va., for Roanoke Memorial Hospital.

Ralph C. Wiegandt, Wiegandt, Ladenheim & Campbell, Fincastle, Va., for Financial Management.

Jerry K. Jebo, Radford, Va., for Credit Bureau of New River Valley.

### JOINT MEMORANDUM OPINION AND ORDER

H. CLYDE PEARSON, Bankruptcy Judge.

The issue before the Court is whether a debtor has a private right of action on a claim of violation of the automatic stay found in § 362 of the Bankruptcy Reform Act of 1978 (the Code), 11 U.S.C. § 362.

These matters are before the Court on defendants' Motions to Dismiss. Because of

factual similarities, the proceedings were consolidated for hearing. In each case, the debtor filed a petition for relief in this Court pursuant to Chapter 7 of the Code. *See* 11 U.S.C. §§ 701–766. Defendant Roanoke Memorial Hospitals (Hospital) was a creditor of each of the debtors. In each case, the Hospital contacted the debtor, after the filing of the petition and after entry of the Order for Relief.[1] Further, in the *Stacy* case, defendant Financial Management Services, Inc. (Financial) attempted to collect amounts due the Hospital from the debtor after the petition. In the *Fitzgerald* case, defendant Credit Bureau of New River Valley (Credit Bureau) attempted to collect on behalf of the Hospital after the petition was filed.

Each debtor, asserting an implied private right of action under the Code, filed a complaint seeking compensatory and punitive damages against the Hospital for violation of the automatic stay of § 362. In addition, Stacy sued Financial and Fitzgerald sued Credit Bureau for violation of the provisions of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692–1692o.

Whether a court may infer a private right of action in favor of a debtor under the Code is apparently a question of first impression. Whether a court may find an implied private right of action for a plaintiff in general, however, is far from an untried question. The Supreme Court first invoked the doctrine of implied rights of action in *Texas & Pacific Ry. v. Rigsby*, 241 U.S. 33, 36 S.Ct. 482, 60 L.Ed. 874 (1916). Since the introduction of the concept, the Court has rendered numerous opinions refining and delimiting the doctrine.

■ An implied private right of action is a recognized means of effectuating the overall goals of a statute. *See* Comment, *Implied Private Rights of Action in Federal Legislation: Harmonization Within the Statutory Scheme,* 1980 Duke L.J. 928, 929. In early opinions, the Court inquired into whether existing express statutory liability

provisions were sufficient to effectuate congressional purpose in the statute.

In a series of opinions between 1964 and 1974, the Court began to clarify the availability of implied rights of action. The standards during this period were fairly broad and liberal. In *J. I. Case Co. v. Borak*, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964), the Court relied on the statute's broad remedial purposes to find private enforcement "necessary to make effective the congressional purpose." *Id.* at 433, 84 S.Ct. at 1560. In *Wyandotte Transp. Co. v. United States*, 389 U.S. 191, 88 S.Ct. 379, 19 L.Ed.2d 407 (1967), the Court set out three criteria for determining whether to infer a private right of action. If the interests of the plaintiff were within the ambit of those protected by the statute, if the harm done the plaintiff was the kind the statute was intended to prevent, and if criminal liability was insufficient to ensure effective enforcement of the statute, then a court could find an implied private right of action. *Id.* at 202, 88 S.Ct. at 386.

The Court limited private rights available under the *Wyandotte* criteria in 1974 by requiring that a private right of action be consistent with the evident legislative intent and with effectuation of the purposes intended to be served by the statute. *National R.R. Passenger Corporation v. National Ass'n of R.R. Passengers*, 414 U.S. 453, 94 S.Ct. 690, 38 L.Ed.2d 646 (1974). The introduction of this fourth criterion, the purport of Congress in enacting legislation, was a premonitory sign of less liberal standards for finding implied private rights of action.

By 1975, the Court had limited implied private rights of action to situations in which such a right could be found as a matter of legislative intent. In *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the Court established four factors as relevant to the inquiry into legislative intent. 422 U.S. at 78, 95 S.Ct. at 2087. First, a court must determine whether the

---

1. Under the Bankruptcy Reform Act of 1978 (the Code), the filing of a voluntary petition under Chapter 7 commences the bankruptcy case, and the commencement of the case constitutes an order for relief. *See* 11 U.S.C. § 301.

plaintiff is one for whose *especial* benefit the statute was enacted. Second, the Court must determine whether there is an expression of any implicit or explicit legislative intent, either to create or deny such a remedy. Third, the court must determine whether implication of such a remedy is consistent with the underlying legislative scheme expressed in the statute. Finally, the court must determine whether the cause of action is one traditionally relegated to state law rendering an implication of such an action under federal law inappropriate. *Id.*

In a later opinion, the Court specified that the first three factors in *Cort* are all aimed at delineation of legislative intent. *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575–76, 99 S.Ct. 2479, 2488, 61 L.Ed.2d 82 (1978). Those three factors focus on the underlying statute's language, history, and purpose. Once those indicators have revealed legislative intent to deny a private right of action to a plaintiff, the Court does not sanction any attempt by the judiciary to "improve upon the statutory scheme that Congress enacted into law." *Id.* at 576, 99 S.Ct. at 2488.

■ If a court finds an implied right of action to be compatible with legislative intent, it must limit that right in such a way as to minimize its impact on the statutory scheme. For example, the Court has held that it would be anomalous to impute to Congress the intention to expand the plaintiff class for an implied right of action beyond the bounds established for a comparable express cause of action. *See Touche Ross & Co. v. Redington*, 442 U.S. at 574, 99 S.Ct. at 2488; *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 736, 95 S.Ct. 1917, 1925, 44 L.Ed.2d 539 (1975). In other words, if the statute sets certain minimum standards which must be met before a plaintiff may pursue the express remedy, a court may not allow an implied remedy that would avoid those minimum standards. Further, a plaintiff may no longer invoke the general "remedial purposes" of the statute to justify reading a provision more broadly than its language and the statutory

scheme would reasonably permit. *Touche Ross & Co. v. Redington*, 442 U.S. at 578, 99 S.Ct. at 2490.

To determine whether a plaintiff may avail itself of an implied right of action under the Bankruptcy Code, this Court must follow the tests established by the Supreme Court. In accordance with *Cort v. Ash* and its successors, this Court must look to the language, history, and purpose of the Code to determine whether there was any Congressional intent either to grant or deny a private right of action for violation of the automatic stay. There can be no doubt that plaintiff debtors are among those for whose especial benefit the Code was enacted. Further, the legislative history does not reveal any unimpeachable evidence of an intent to either create or deny such a right. A close look at the legislative scheme, however, reveals congressional intent to task the bankruptcy court with enforcement of the automatic stay.

■ The language and history of the Code give the bankruptcy court the power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Code. 11 U.S.C. § 105(a). The proscriptive provision of the Code in question here, the § 362 automatic stay provision, is not a proscription to be enforced by a debtor or any third party. A stay is an order of the court, to be enforced by the court. In fact, the § 362 automatic stay provision is a sufficiently specific and direct order of the court to invoke the remedy of contempt of court for its violation. *See Abt v. Household Finance Co.*, 1 C.B. C.2d 374, 376, 2 B.R. 323 (Bkrtcy.E.D.Pa. 1980).

The bankruptcy court's power under the Code to punish contempt is limited to punishment of civil contempt, or an act of criminal contempt committed within the presence of the judge and not punishable by imprisonment. *See* 28 U.S.C. § 1481. The limitation of the amount of fine a bankruptcy judge could impose for civil contempt found in Rule 920, Federal Rules of Bankruptcy Procedure, is no longer applicable under the Code. A bankruptcy judge,

therefore, may impose any fine on the contemnor, in his or her discretion. In addition, a bankruptcy judge may assess compensatory damages against the contemnor in favor of the plaintiff.

Judicial sanctions in civil contempt may be employed either to coerce the defendant into compliance with the court's order, or to compensate the complainant for losses, or both. *United States v. United Mine Workers,* 330 U.S. 258, 303–04, 67 S.Ct. 677, 701, 91 L.Ed.2d 884 (1946). Compensatory fines are payable to the complainant. The measure of damages is the actual damage done the complainant. *Id.* at 304, 67 S.Ct. at 701. Both the measure and reasonableness of such damages must be established in an evidentiary hearing. *In re Reed,* 11 B.R. 258, 276 (Bkrtcy.D.Utah 1981). Actions taken in violation of the automatic stay are void. *Springfield Bank v. Caserta,* 10 B.R. 57, 60 (Bkrtcy.S.D.Ohio 1981); *Mongiove v. Browne,* 9 B.R. 34, 35 (Bkrtcy.S.D.Fla.1980). The plaintiff's proof of damages, therefore, would have to show the amount of harm resulting from the loss of the *status quo* during the period of the violation.

It is an unsettled question whether a bankruptcy court may assess punitive damages to be paid to a party rather than to the court, without overstepping the § 1481 limitations against punishing a criminal contempt not committed within the presence of the court. The drastic nature of contempt, however, dictates that it should be used only in "clear and urgent instances" of effrontery to the power of the court. *See Springfield Bank v. Caserta,* 10 B.R. 57, 59 (Bkrtcy.S.D.Ohio 1981). Contempt is not a device to be used by litigants to redress personal grievances. *Id.* If debtors suffer damages from a violation of the stay, that wrong should be litigated in a civil suit against the wrongdoer. *Id.*

The Code, by proscribing certain conduct by nondebtors, does not create or alter any civil liabilities imposed by nonbankruptcy law. *In re Reed,* 11 B.R. 258, 270 (Bkrtcy.D.Utah 1981); *Pal Transp., Inc. v. All Florida Recovery Agency, Inc.,* 8 B.C.D. 183, 186, 13 B.R. 935 (Bkrtcy.M.D.Fla.1981). In litigation to remedy wrongs done a debtor by a nondebtor party, the question of punitive damages remains a question of nonbankruptcy law. If such a remedy is available to the plaintiff debtor outside of bankruptcy, then that remedy would not be disturbed by the intervening bankruptcy filing.

In this proceeding, the plaintiff debtors assert a right to compensatory and punitive damages pursuant to their alleged private right of action against the parties who violated the automatic stay. There is no such private right of action under the Code. The claim for damages asserted under that theory is, therefore, without merit. Accordingly, defendants' Motions to Dismiss the complaints of plaintiffs, insofar as those complaints rely on the private right of action theory, are GRANTED.[2]

As the defendants' conduct complained of is apparently not continuing, this Court feels that the extraordinary remedy of contempt of court is no longer appropriate to the circumstances of the case. The underlying action against defendants, however, alleging a violation of the Fair Debt Collection Practices Act, is and remains an appropriate avenue to remedy any harm done the plaintiffs. Both adversary proceedings must, therefore, be set for evidentiary hearing on the merits of the civil claims asserted by the plaintiffs. The proceedings will be heard on April 28, 1982, at 10:30 a. m. in the U. S. Bankruptcy Courtroom, Room 357, Third Floor, U. S. Courthouse & Federal Building, 210 Franklin Rd., S.W., Roanoke, Va.

It is so ORDERED.

2. The Court does not here pass on the question as to whether or not violation of the 11 U.S.C. § 362 stay provision may not be an integral part of the evidence bearing on the issue of the Fair Debt Collection Practices Act claim. As to that matter, a determination is deferred pending hearing thereon.