**In the Matter of Jerry Richard DePOY, Patricia Ann Depoy, Debtors.**

**Jerry Richard DePOY, Patricia Ann DePoy, Plaintiffs,**

v.

**Wesley G. KIPP, Jo Ann Kipp, Defendants.**

**Bankruptcy No. 81–31356.
Adv. No. 82–3005.**

United States Bankruptcy Court,
N.D. Indiana,
South Bend Division.

Feb. 28, 1983.

Tedd E. Mishler, Michigan City, Ind., for debtor/plaintiffs.

Hugo A. Bamberth, LaPorte, Ind., for defendants.

## ORDER

ROBERT K. RODIBAUGH, Bankruptcy Judge.

This matter is before the Court on an amended application for contempt citation and complaint for damages brought by Mr. and Mrs. DePoy (debtors hereafter) against Mr. and Mrs. Kipp (defendants hereafter). In the application the debtors seek a contempt citation against both Mr. and Mrs. Kipp for various acts done in violation of the automatic stay of the Bankruptcy Code,[1] with the knowledge that a bankruptcy petition had been filed and that the stay was in effect. The debtors seek compensatory, punitive, and in terrorem damages. Further, the debtors request that the Court certify the facts in this proceeding to the United States District court and request a citation for criminal contempt, and that they be awarded costs and attorney's fees.

Basically, the debtors contend that the defendants committed a series of acts to evict the debtors from a residence leased from the defendants and to collect prepetition debts after the defendants knew of the bankruptcy and automatic stay. Thus, such acts were not only violations of the stay but also acts in contempt of this Court. Further, the debtors argue that the acts should be certified to District Court in order to prosecute for criminal contempt. The defendants have asserted various defenses, including a misunderstanding of the scope of

the stay. These defenses are considered below.

The facts are necessarily very important in this proceeding. The Court has carefully scrutinized the entire record in this case, including the evidence submitted at trial, the briefs, and pleadings and has carefully weighed the testimony given at trial. As a result of this review, the Court makes the following findings of fact.

## FINDINGS OF FACT

The debtors have leased a residence located at 302 Grove Street, LaPorte, Indiana, for a number of years on an oral month-to-month lease, with rent due in advance for each month. The defendants purchased the residence in 1980, subject to the debtors' lease. The defendants had sent letters to the debtors on various occasions in the months prior to the filing of a bankruptcy petition to obtain payment of past due rent amounts, which were then paid. Debtors had paid their rent in full up to November 22, 1981. They did not make the payment in advance for the period of November 22, 1981, through December 22, 1981. By letter dated December 3, 1981, Mr. Kipp informed the debtors that they must make prompt payment of the overdue rent, and that if payment was not received by December 14, 1981, eviction papers would be filed.

On December 10, 1981, the debtors filed a chapter 13 petition in bankruptcy upon which date this Court did enter an order for relief. On December 15, 1981, Mr. Kipp, who is an attorney practicing law in Indiana, filed a complaint on behalf of himself and Mrs. Kipp as owners of the property for possession, eviction, and rent due. This filing was made without knowledge that the debtors had filed a petition in bankruptcy. This complaint was set for a hearing in the afternoon of December 21, 1981, in LaPorte County Court. In the morning of December 21, 1981, prior to the scheduled hearing, the debtors, through counsel, appeared in LaPorte County Court before Judge Baldoni. The Judge, in response to the debtors'

---

1. 11 U.S.C.A. § 362 (West, 1979).

petition for a stay of the state court proceedings, signed an order for temporary stay of all proceedings in that cause of action. The petition for temporary stay filed by the debtors set out the fact that they had filed a bankruptcy petition in federal court, and that an automatic stay was in effect restraining the Kipps from taking any further action against the debtors. The debtors attached a copy of the first page of their Chapter 13 petition, which was file marked, and which indicated that relief had been ordered. They also filed a page from their plan showing that they proposed to pay all creditors, including the Kipps, 100% of their claims.

In the afternoon of December 21, 1981, Mr. Kipp appeared before Judge Baldoni for the hearing on the defendants' complaint. The debtors did not appear by counsel or otherwise. The transcript of that hearing (Debtors' Exhibit A at page 17) shows that Judge Baldoni told Mr. Kipp at the start of the hearing that the case had been stayed. Mr. Kipp said in response:

I understand. I looked at the.... I'm not concerned about any, uh, staying for monetary thing. I.... I looked at it for a minute there. Is it... They're in bankruptcy or something. Is that it?

To that question, the Judge answered in the affirmative. Mr. Kipp went on to say as follows:

My concern is ... is to get the possession of the property back. Uh, it's not my understanding that, uh, one can file bankruptcy and, uh ... and stay a, uh, proceedings to obtain possession of the property for wrongfully withholding.

At trial Mr. Kipp said that he could not recall to what he was referring when at the hearing he stated, "he had looked at it." The debtors argued that Mr. Kipp had looked at the petition for temporary stay filed by their counsel earlier that day. Mr. Kipp also testified that this record shows that he and Judge Baldoni had a dialogue and decided that Kipp could proceed in spite of the stay, based on their mistaken understanding regarding the stay.

There is no doubt that neither Judge Baldoni nor Mr. Kipp correctly interpreted the scope of the automatic stay, for the state court allowed the case, which had been stayed earlier in that day, to proceed. The Judge found for the Kipps. Mr. Kipp agreed to submit a form of order for possession, which would be served by the Sheriff.

Thus, as of December 21, 1981, Mr. Kipp knew the debtors had filed a petition in bankruptcy and knew that a stay was in effect.

On this same day counsel for the debtors, as shown by the evidence, mailed a letter to Mr. Kipp, with a copy of all pages that had been filed in state court that morning, informing him of the automatic stay. Testimony showed that this letter, properly addressed to Mr. Kipp's law office, had been placed in the mail and had not been returned.

On December 24, 1981, Mr. Kipp filed a prejudgment form of order for possession with the state court and requested that the same be served on the debtors. Also, on this date the Bankruptcy Court mailed to Mr. Kipp's law office a notice of a creditors' meeting and of the automatic stay. Mr. Kipp testified he did not see this notice until January 5, 1982.

On December 26, 1981, the Kipp family left town for a vacation. Mr. Kipp returned to his law office on January 3, 1982. On December 28, 1981, the Sheriff served the prejudgment order for possession on the debtors. On January 4, 1982, counsel for the debtors called Mr. Kipp at his office. While the evidence shows that there is a dispute as to just what was said during the conversation, there is no dispute that the attorneys discussed the fact that the debtors had filed a bankruptcy petition, that a stay was in effect, and that the continuing attempts by Mr. Kipp to have the debtors evicted violated the stay.

On January 5, 1982, the state court, on its own motion, set the matter for hearing on whether an Order for eviction could be entered. This hearing was to be held on January 14, 1982. The state court sent a notice to this effect to Mr. Kipp's law of-

fice. Even though Mr. Kipp admits that he saw the Bankruptcy Court's notice of the automatic stay on January 5, 1982, he took no action upon receipt of the notice for the state court hearing to have that proceeding stopped.

On January 6, 1982, Mr. Kipp, who knew that the debtors were represented by counsel, sent a letter directly to the debtors requiring that the debtors contact Mr. Kipp to discuss their continued use of the premises and to discuss an arrangement to pay the arrears and keep current on the rent. Mr. Kipp indicated in the letter he would proceed to have the debtors evicted if they had not contacted him on or before January 11, 1982. (Debtors' Exhibit D.)

On January 14, 1982, Judge Baldoni found that the automatic stay prevented any further proceeding in state court in the case until further order of the Bankruptcy Court and accordingly continued the matter. In the afternoon of January 14, Mr. Kipp attended a creditors' meeting and a hearing on confirmation of the debtors' plan. Kipp neither rejected the plan nor objected to confirmation. By oral modification during the proceedings it was agreed that the debtors would pay rent and utility arrears owed to the Kipps within the Chapter 13 plan and that they would keep the rent current by payments to them outside the plan. The plan was approved by this Court.

On January 22, 1982, Mrs. DePoy, along with another person who testified at trial, went to Kipp's law office to make the first payment due after the confirmation hearing. The testimony of Mrs. DePoy and the witness shows that Mr. Kipp refused to take the check and requested payment of the arrears. He then told Mrs. DePoy to take the check to the office of his attorney.

The Court finds that at the time of each of the acts stated above from the afternoon of December 21, 1981, Mr. Kipp knew that the plaintiffs had filed a petition in bankruptcy, and that the automatic stay was in effect.

Further, the Court finds that Mr. Kipp is a practicing attorney who has been involved with bankruptcy law in the past, although he apparently has not actively practiced bankruptcy law since enactment of the new bankruptcy Code.

## CONCLUSIONS OF LAW

■ At the trial in this matter the defendant sought directed verdict in favor of both defendants. The motion was denied as to Mr. Kipp, and a ruling was withheld on the motion as to Mrs. Kipp. The Court now grants directed verdict in favor of Mrs. Kipp. There is insufficient evidence in the record that Mrs. Kipp had knowledge of the bankruptcy and the automatic stay. The debtors have argued that Mrs. Kipp would have received certain notices mailed to the Kipps. Further, they contend that Mr. Kipp acted as an attorney for Mr. and Mrs. Kipp, and thus Mrs. Kipp is liable on a principal-agent theory. Finally, they assert that incorrect legal advice is not a defense to the contempt action. While the last assertion is correct, the record just does not show any actual or constructive knowledge by Mrs. Kipp of anything happening in this matter. All bankruptcy notices were sent to Mr. Kipp at his law office, as were letters and notices from the state court and debtors' attorney. Further, even though Mr. Kipp did represent both Mr. and Mrs. Kipp in the state court proceeding, there is no evidence that he ever consulted with, informed, or otherwise brought the fact of bankruptcy and stay to Mrs. Kipp's attention.

■ In order to find a person in civil contempt, the party accused of contemptuous conduct must be shown to have had notice or knowledge of the Court's order sufficient to put the party on notice of the proscribed conduct. *In re Reed,* 11 B.R. 258 (Bkrtcy.D.Utah 1981); *In re Sandmar,* 12 B.R. 910 (Bkrtcy.D.N.M.1981); *Yates v. United States,* 316 F.2d 718, 723 (10th Cir. 1963); *Fidelity Mortgage Investors Co. v. Camelia Builders, Inc.,* 550 F.2d 47 (2d Cir. 1976); *In re Hailey,* 621 F.2d 169 (5th Cir. 1980). Debtors have not met the burden of proof required for finding Mrs. Kipp in

contempt. *In the Matter of Pal Transport, Inc.,* 13 B.R. 935 (Bkrtcy.M.D.Fla.1981).

■ Regarding the acts of Mr. Kipp from the afternoon of December 21, 1981, through January 22, 1982, as set out above, the Court concludes that these acts, each of them, were in violation of the automatic stay of Section 362. Further, the Court concludes that these acts were done with knowledge of the debtors' bankruptcy and the automatic stay. Accordingly, the Court finds Mr. Kipp to be in civil contempt of this Court. Furthermore, since all acts taken in violation of the automatic stay are null and void ab initio, the notices and orders issued as part of the state court proceeding to obtain possession are void and without effect.

As stated above, the critical element of civil contempt is that a party who had notice or knowledge of an order of a court sufficient to put the party on notice of proscribed conduct acts contrary to the order. The record is clear in this case that Mr. Kipp had both notice from the debtors' pleadings filed in state court in order to obtain a temporary stay of state court proceedings and knowledge of the bankruptcy and the stay from Judge Baldoni. From that point on Mr. Kipp was under a duty to refrain from any conduct that would be in violation of the stay. He also was put on notice and had a duty to inquire further regarding the scope of the stay. *In re Reed, supra* at 275; *In re Edwards,* 5 B.R. 663, 665 (Bkrtcy.M.D.Ala.1980); *In re MacDonald,* 6 B.R. 23 (Bkrtcy.N.D.Ohio 1980); *The Babee-Tenda Corp. v. Scharco Manufacturing Co.,* 156 F.Supp. 582, 587 (S.D.N.Y.1957); *In re Asters,* 11 B.R. 483, 484 (Bkrtcy.D.R.I.1981); *In re Brooks,* 12 B.R. 283, 284 (Bkrtcy.W.D.Mo.1981).

■ The record shows that Mr. Kipp frequently practiced bankruptcy law under the former Bankruptcy Act. Thus there is no doubt he would have been aware of the nature of the automatic stay. He clearly would have sufficient knowledge and training that he should inquire further and read the law before taking any further acts against the debtors, property of the estate, or property held by the estate. Thus the Defendant's argument that he proceeded on December 21, 1981, after notice, because of his belief that the scope of the stay did not extend to his acts to recover property is at best an insufficient excuse and defense. Mr. Kipp proceeded without even checking the law in this regard. Kipp argues that his misunderstanding resulted from his dialogue with Judge Baldoni. Yet the record shows clearly that Judge Baldoni made no comment on the scope of the stay. Rather, Kipp convinced the Judge that the stay did not extend to his acts to obtain possession of the property. It is true that Judge Baldoni, who had issued his own stay of the proceeding in addition to the notification by the debtors of the bankruptcy stay, should not have proceeded with the case on the afternoon of December 21, 1981. Nevertheless, it is also clear that the Judge would not have done so except for the arguments of defendant that the bankruptcy stay did not extend to the state court case. Furthermore, even if the Judge had encouraged the defendant to proceed, that would not have relieved the defendant from further inquiry regarding the scope of the stay. The duty to inquire fell on the defendant, not the Judge. It is also well settled that it is not a defense that a party acted upon advice of counsel. *In re Eisenberg,* 7 B.R. 683 (Bkrtcy.E.D.N.Y.1980); *United States Steel Corp. v. United Mine Wkrs of Am,* 393 F.Supp. 942 (W.D.Pa.1975); 2 Collier on Bankruptcy ¶ 362.11 (15th ed 1982).

In addition, Mr. Kipp could have sought a clarification from the bankruptcy court regarding the scope of the stay, and when he did not do so, he undertook a calculated risk under the threat of contempt in making his own determination of what the stay order means. *In the Matter of Batla,* 12 B.R. 397 (Bkrtcy.N.D.Ga.1981), citing *McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 192, 69 S.Ct. 497, 500, 93 L.Ed. 599 (1948).

■ As the days went by, the record shows beyond doubt that Mr. Kipp not only based his actions in violation of the stay upon his own determination of the scope of the stay, but also that he adhered to his

interpretation in spite of clear indicators that he was wrong. For example, the facts established that counsel for the debtors sent by mail on December 21, 1981, a letter advising Kipp of the bankruptcy and stay, along with copies of the filing made in state court in the morning of December 21, 1981. The defendant says he never saw this mailing. Evidence was presented regarding the preparation of this mailing and the office procedures for mailing. Further, the item was not returned to the sender. Where notice has been mailed to the correct and current address and the item is not returned, delivery is presumed. *In the Matter of Batla,* 12 B.R. 397 (Bkrtcy.N.D.Ga. 1981). Thus the Court infers that this mailing was delivered to Mr. Kipp's law office. Further, on December 24, 1981, the Clerk of this Court sent to Mr. Kipp's law office a notice regarding a creditors' meeting and the automatic stay. Kipp said he did not see this notice until January 5, 1982. Nevertheless, after admittedly seeing the Court's notice regarding the stay, Mr. Kipp made no effort to cancel the prejudgment order of eviction, nor to stop a hearing on eviction set in state court for January 14, 1982. Furthermore, Mr. Kipp sent a letter on January 6, 1982, directly to the debtors in an effort to get them to contact him in order to make an arrangement with him. He stated that if they did not do so promptly he would continue the eviction proceeding. Mr. Kipp knew at the time he sent this letter that the debtors were represented by counsel. He knew who their attorney was and how to reach him. This is clearly an act in violation of the stay. By this point in time, Mr. Kipp's explanation that he just misunderstood the scope of the stay is completely unacceptable.

In fact, the evidence shows that on January 4, 1982, the attorney for the debtors contacted Mr. Kipp by telephone in an attempt to stop any further steps toward eviction. While the evidence is in dispute regarding just what was said by each attorney, there is no doubt that the conversation indicated that the debtors believed Kipp's action to be in violation of the stay and contemptuous.

Finally, there can be no doubt that by January 22, 1982, Mr. Kipp knew or should have known that the stay, of which he was clearly aware, prohibited any further attempts to collect prepetition debts other than as provided in the debtors' approved Chapter 13 plan. Yet he made an attempt to get the debtors to pay the same during a confrontation in his office at the time Mrs. DePoy attempted to make the rent payment due that day.

Bankruptcy Code Section 362 in relevant part provides:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate;

.    .    .    .    .

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.

A possessory right alone is sufficient to trigger the automatic stay, even though the lease had terminated. *In the Matter of Gibbs,* 9 B.R. 758, 762 (Bkrtcy.D.Conn.1981); *Pickus v. Vitagliano,* 8 B.R. 114, 118 (Bkrtcy.D.Conn.1980); *In the Matter of GSVC Restaurant Corp.,* 3 B.R. 491 (Bkrtcy. S.D.N.Y.1980), *affirmed,* 10 B.R. 300 (S.D. N.Y.1980); *In the Matter of R.R.S., Inc.,* 7 B.R. 870, 873 (Bkrtcy.M.D.Fla.1980); *In the*

*Matter of Lane Foods, Inc.,* 213 F.Supp. 133, 136 (S.D.N.Y.1963); *Thompson v. Magnolia Petroleum Co.,* 309 U.S. 478, 481, 60 S.Ct. 628, 630, 84 L.Ed. 876 (1940).

In addition, the Court points out that Section 362(a)(3) prohibits any act to obtain possession of property of the estate *or of property from the estate* (emphasis added). Thus the defendant was enjoined from seeking the return of property that was not part of the estate but that was held by the estate.

By pursuing state court action following knowledge of the stay, by causing a prejudgment order of eviction to be served on debtors, by sending a letter to the debtors in an attempt to collect arrears and/or obtain possession, by failing to put a halt to the state court eviction process, and by attempting to collect prepetition debts on January 22, 1982, the defendant has committed a series of acts that violate the stay. These acts were done with knowledge of the stay. Accordingly, the Court has determined that Mr. Kipp is in contempt. *In re Reed,* 11 B.R. 258 (Bkrtcy.D.Utah 1981); *In re Wariner,* 16 B.R. 216 (Bkrtcy.N.D.Tex. 1981); *In re Stacy,* 21 B.R. 49 (Bkrtcy.W.D. Va.1982); *In re Gibson,* 16 B.R. 682 (Bkrtcy. S.D.Ohio 1981); *In re Edwards,* 5 B.R. 663 (Bkrtcy.M.D.Ala.1980).

## DAMAGES

The debtors have asked for the following damages:

(1) Compensatory—Total $43,708

a) costs of the proceeding

b) reasonable attorney fees of $3,126 based on 52 hours of work at $60.00 per hour

c) trespass to person and property by service of eviction order—$20,000

d) trespass to person and property by letter of January 6, 1982—$20,000

e) travel expenses to come to trial and lost wages

f) humiliation, pain and suffering, mental anguish

(2) Punitive—$50,000

(3) In Terrorem—$50,000

The defendant disputes both the right to and the amount of the damages in each instance. More specifically, the defendant contends that: (1) it has complied with the Court's order, thereby purging itself of any contempt, and thus the matter is moot; (2) in civil contempt only compensatory damages are available, not punitive nor in terrorem; (3) the debtors have not sufficiently proved their damages; (4) the amount of the requested attorney's fees is unreasonable.

The defendant cites *Washington Metro Area Transit Authority v. Amalgamated Transit Union, Etc.,* 531 F.2d 617 (D.C.Cir.1976) for the proposition that this matter is moot and no further action is required. The Court disagrees. First, in the cited case, the Court of Appeals found that the appeal by a union of an order entering a preliminary injunction ordering workers back to work was a moot issue, because by the time of the appeal the parties had settled their labor differences, and all workers were on the job. It was the continuance of the preliminary injunction that was moot, not the action for contempt. The Court of Appeals went on to address itself to the fines to be imposed for earlier contemptuous acts. Furthermore, the automatic stay in this proceeding is still in effect, and thus a proceeding to enforce the same is not moot. Finally, even if the contemnor is now acting in accord with the automatic stay order, that fact would not preclude the debtors from recovery of their damages which had resulted from conduct that was clearly contemptuous when carried out.

The defendant argues that in civil contempt only compensatory damages are available, and that the measure for such damages is the actual losses suffered by the plaintiffs. Thus there can be no punitive, nor in terrorem damages.

While the law is unsettled regarding whether a Bankruptcy Court can impose punitive damages in a civil contempt proceeding, this Court believes that the better view is that a Bankruptcy Court may not

impose punitive damages without violating 28 U.S.C. § 1481[2] which prohibits the Bankruptcy Court from punishing a criminal contempt not committed in the presence of the judge. *In re Stacy,* 21 B.R. 49, 53 (Bkrtcy.W.D.Va.1982); *In re Reed,* 11 B.R. 258, 277 (Bkrtcy.D.Utah 1981); *The Babee-Tenda Corp. v. Scharco Manufacturing Corp.,* 156 F.Supp. 582, 587 (S.D.N.Y.1957).

■ It is clear that a Bankruptcy Court may not punish criminal contempt committed outside the presence of the judge. Thus a critical threshold question in contempt actions is whether civil or criminal contempt is at issue. In this proceeding the debtors seek a finding of civil contempt and certification to the district court for criminal contempt. Thus the contempt addressed to the attention of this Court is to be that which is civil. The pivotal inquiry in distinguishing civil from criminal contempt is what does the Court primarily seek to accomplish by imposing sentence. *Shillitani v. United States,* 384 U.S. 364, 370, 86 S.Ct. 1531, 1535, 16 L.Ed.2d 622 (1966); *In re Reed, supra* at 266. In civil contempt a sentence may be imposed in order to secure compliance with the Court's order or to compensate the injured party for its actual losses occasioned by contemnor's acts or both. *United States v. United Mine Workers,* 330 U.S. 258, 303, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1946) *quoting, Gompers v. Bucks Stove & R. Co.,* 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797 (1911). On the other hand, when the purpose of sentencing is to vindicate the authority of the Court and to protect the public by making an example of unacceptable conduct, then the contempt action is criminal in nature. *Clay v. Waters,* 178 F. 385 (8th Cir.1910); 1 Collier on Bankruptcy ¶ 3.01[5][b][v] at 3–104 (15th ed. 1982). Thus the focus of the sentence is of primary importance in distinguishing civil from criminal contempt. Since the penalty in civil contempt is to be remedial and/or coercive only, the inclusion of punitive damages may convert the action to one for criminal contempt. Accordingly, the Court holds that the imposition of punitive dam-

ages is not appropriate in a case of civil contempt brought before a Bankruptcy Court.

The debtors have cited a few cases in which the court involved did assess punitive damages in a civil contempt proceeding, however, the Court does not find these cases persuasive on the issue of whether or not such damages were appropriate. The Court, in *In re Asters,* 11 B.R. 483 (Bkrtcy. D.R.I.1981), fined the defendant $1,000 in punitive damages and awarded these to the debtors. The Court had found bad faith on the part of the defendant. The court did not grant an award for costs or attorney's fees, since it had given punitive damages and concluded it could not award both. The cases cited by the *Asters* Court for the proposition that punitive damages were permissible were neither bankruptcy court cases nor contempt cases. Rather they were civil actions in which bad faith had been found in addition to other wrongs. Further, there was no discussion in *Asters* whether punitive damages were allowed under the Bankruptcy Code nor whether the same would violate Section 1481.

In *In re Walker,* 7 B.R. 216 (Bkrtcy.D.R.I. 1980), the same court as in *Asters, supra,* again after a finding of bad faith, awarded punitive damages. The Court cited the same cases referred to in *Asters* to support its position. It also concluded that cases in its circuit prohibited awarding both punitive damages and attorney fees. The criticism of this position stated above also applies here.

■ Civil contempt is remedial and compensatory and is not punitive. *United States v. United Mine Workers,* 330 U.S. 258, 304, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1946); *Gompers v. Buck Stove & Range Co.,* 221 U.S. 418, 441, 31 S.Ct. 492, 498, 55 L.Ed. 797 (1911). Punitive damages are given to punish over and above the actual loss the victim has suffered and to make an example for all to see that the courts will not tolerate bad faith dealing. By granting punitive damages in civil contempt cases a

---

**2.** 28 U.S.C.A. § 1481 (West, 1979).

**480**

Bankruptcy Court crosses over the threshold to criminal contempt, and it would ignore the inherent distinction between civil and criminal contempt as well as the limitations of 28 U.S.C. § 1481. If a Bankruptcy Court believes that punishment is necessary to demonstrate that such bad faith dealing will not be tolerated, in addition to granting compensatory damages for the remediation of the injured party, the Court can certify the facts to the District Court for the purpose of punishing for criminal contempt.

The two cases from the same Bankruptcy Court do not persuade this Court to depart from its reading of the law nor from the decisions of numerous other courts which share our concern in this issue. *See, e.g., The Babee-Tenda Corp. v. Scharco Manufacturing Co.,* 156 F.Supp. 582, 587 (S.D.N.Y.1957) and cases cited therein; *Thompson v. Johnson,* 410 F.Supp. 633 (D.C.Pa.1976) *affirmed* 556 F.2d 568 (3d Cir.1977); *In re Reed,* 11 B.R. 258, 276–277 (Bkrtcy.D.Utah 1981); *In re Hubbard,* 11 B.R. 258, 280 (Bkrtcy.D.Utah 1981); *In re Stacy,* 21 B.R. 49, 53 (Bkrtcy.W.D.Va.1982); *Lance v. Plummer,* 353 F.2d 585 (5th Cir.1965); *N.L.R.B. v. J.P. Stevens & Co., Inc.,* 563 F.2d 8, *cert. denied,* 434 U.S. 1064, 98 S.Ct. 1240, 55 L.Ed.2d 765 (1977); *Broadview Chemical Corp. v. Loctite Corp.,* 311 F.Supp. 447 (D.C. Conn.1970); *Springfield Bank v. Caserta,* 10 B.R. 57, 59 (Bkrtcy.S.D.Ohio 1981); *In re Brooks,* 12 B.R. 283 (Bkrtcy.W.D.Mo.1981).

If the debtors wish to pursue their desire to obtain punitive damages for the trespasses to their person and property, they should do so in a separate civil action distinct from a contempt proceeding. *In re Stacy, supra* at 53.

Accordingly, plaintiffs' request for punitive damages is denied.

On the other hand, damages may be awarded in civil contempt to coerce compliance with the Court's order or to compensate the plaintiffs for their actual losses or both. *United States v. United Mine Workers, supra* 330 U.S. at 303, 67 S.Ct. at 701. A fine and/or in terrorem damages may be appropriate in order to coerce compliance. *In re Reed, supra* at 276; *Sunbeam Corpo-*

*ration v. Golden Rule Appliance Co.,* 252 F.2d 467 (2d Cir.1958). Further, in civil contempt, a court may award damages for any actual loss suffered by the plaintiffs as well as costs of bringing the action and attorney's fees. *Commodity Futures Trading Com'n v. Premex, Inc.,* 655 F.2d 779, 785 (7th Cir.1981); *The Babee-Tenda Corp. v. Scharco Manufacturing Co. supra* at 587; *In the Matter of Batla,* 12 B.R. 397 (Bkrtcy. N.D.Ga.1981).

In terrorem damages are given in order to coerce compliance where the contemnor has a proclivity for future misconduct in violation of the Court's order. After a review of the record and testimony in this case, the Court concludes that there is insufficient cause for imposing in terrorem damages. The debtors argued that the facts that the defendant committed a series of violations of the stay and that Mr. Kipp is still in violation in that he has not caused the prejudgment order for possession to be rescinded demonstrate that he has a proclivity to continue acts contrary to the stay. The Court does not agree. While the defendant failed in his duty to ascertain the scope of the stay and consequently violated it in numerous instances, there have not been violations brought to the Court's attention since February 24, 1982, when the pre-trial conference was held in this matter. The defendant has complied with the stay since that time, which is one year. In fact, when the debtors recently fell behind in keeping the rent current in compliance with their plan, the defendant came to the Bankruptcy Court for relief rather than take any other type of action against the debtors. Further in a companion case to this one, the Court has provided for relief from stay in the near future. Further, while it is correct that the defendant has not acted to rescind the prejudgment eviction order, the state court has stayed all proceedings in that case until further order of this Court. The order is void. Equity does not require the doing of a useless thing. At this point in this matter defendant's failure to have the prejudgment order rescinded does not cause the Court to be concerned that the defend-

ant intends continued violation of the stay. We see no reason to believe in terrorem damages are necessary, given these circumstances.

The debtors are entitled to recover their actual losses. At trial Mr. DePoy, who is an over-the-road truck driver, testified that he lost wages because he had to stay home in early January of 1982 due to the threatened eviction of his family. Further, he lost work due to the necessity of attending the trial in this case and incurred traveling expenses to come from his point of dispatching in Illinois. The debtor testified that, based on the jobs his dispatcher said were available to him, had the debtor-truck driver been able to take the same, he lost wages in the amount of $414 for the period January 2–4, 1982, and $200 for the days to attend the trial. Further, the debtor testified that he had out-of-pocket expenses of $60.00 to travel from his point of dispatch to the trial and back. The Court is satisfied with the evidence presented on these actual losses and finds that the plaintiffs suffered an actual loss of $674.00. Accordingly, the plaintiffs are awarded $674.00 payable to the plaintiffs within thirty days from the date of the judgment in this matter.

Further, the Court awards the plaintiffs costs of this proceeding and reasonable attorney's fees.

The reasonableness of the attorney's fee is a matter left to the review and judgment of the Court. Specific evidence need not be presented. The Court can review the file, the quantity and quality of the services, etc., to determine what is a reasonable fee. The debtors ask for a fee based on 52 hours at $60.00 per hour. The Court finds that the hourly rate is reasonable. Further the Court takes note of the fact that the attorney for the debtor was required to devote more time and effort than is usually given in an application for contempt for violation of the automatic stay due to the fact that the defendant continued his contumacious conduct in instance after instance in spite of efforts of debtors' counsel to get compliance very early on in the case. Thus the attorney for the debtor had to make filings and personal appearances twice in state court. He had to have numerous conferences with his clients each time an additional act to evict them was taken to assure them that the bankruptcy laws would protect them. Further, there were mailings sent to Mr. Kipp and a phone call. The trial in this matter was lengthy and complicated. Debtors' attorney spent time to investigate the matter, prepare the pre-trial order, and file a thorough trial brief and response brief. All of these activities were caused by the defendant's continuous series of acts in violation of the stay.

However, to assist the Court in a final determination of the specific amount of attorney's fees to be awarded, the Court directs the attorney for the debtors to submit to the Court forthwith an itemized billing of services provided in relation to this proceeding. The Court will promptly thereafter award a reasonable attorney's fee.

Judgment in this entire matter will issue upon determination of the attorney's fees.

Finally, after a careful review of the record, the Court declines to certify facts in this case to the District Court for a proceeding in criminal contempt. While the Court has found that the defendant's acts were in violation of the Court's order, the facts show that defendant acted more out of his failure to investigate and discover the scope of the stay order, which he should have done, but he did not act in direct defiance of an order of the Court, nor did he act with the type of disobedient attitude toward the Court itself for this Court to request punishment to vindicate its dignity.

SO ORDERED.