**In re Lorenzo Augusta CALENDER, II, Debtor.**

**Bankruptcy No. 88–00107.**

United States Bankruptcy Court, District of Columbia.

Aug. 15, 1988.

Nelson Kline, Washington, D.C., for debtor.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW RE CONTEMPT MATTER

S. MARTIN TEEL, Jr., Bankruptcy Judge.

This matter was heard on July 7, 1988, pursuant to the Court's Show Cause Order entered on June 23, 1988, for the purpose of determining whether contempt was committed by Clarence Dwight Pearson and for the purpose of fixing civil sanctions, compensatory or coercive, if contempt had been committed.

## FINDINGS OF FACT

1. In 1987, Clarence Dwight Pearson filed a civil action in the Superior Court for the District of Columbia, Civil Division, Small Claims and Conciliation Branch, Case No. 15543–87, to recover a monetary judgment against the Debtor.

2. The Debtor filed his petition in this case on February 17, 1988. By the end of the month he informed Mr. Pearson that he had filed a bankruptcy case.

3. On March 23, 1988, counsel for the Debtor mailed to Mr. Pearson a Suggestion of Bankruptcy in the Superior Court action. Mr. Pearson received this notification shortly after its mailing.

4. The Suggestion of Bankruptcy notified Mr. Pearson that although Mr. Pearson's civil action to enforce his claim was filed prior to the filing of the bankruptcy case, "said claim is a provable claim in the Bankruptcy proceeding and all actions to collect on said judgment are to be stayed under the Bankruptcy Act." The language used by Debtor's counsel is somewhat outdated because the Bankruptcy Code, under which this case was filed, does not utilize the concept of provable claims that existed under the Bankruptcy Act. Nevertheless, the Suggestion of Bankruptcy clearly indicated to Mr. Pearson the Debtor's position that his bankruptcy case acted as a stay under the law of all efforts to collect Mr. Pearson's claim against the Debtor.

5. On April 1, 1988, Mr. Pearson went to the Clerk's office at the Bankruptcy Court and examined the file therein. He had not been listed as a creditor, at least in the Debtor's original filings, and for this reason thought that the proceeding did not apply to him because he had not been given official notice.

6. He saw in the file a notice of the automatic stay which had not been mailed to him because he had not been listed as a creditor. That notice (part of Docket Entry No. 3, Order for Meeting of Creditors, Combined with Notice Thereof and of Automatic Stays) stated:

"As a result of the filing of the petition, certain acts and proceedings against the Debtor and his property are stayed as provided in 11 U.S.C. Section 362(a) * * *. Significant parts of these sections are reproduced on the reverse side of this notice."

The reverse side of the notice stated in relevant part:

"Section 362(a) (11 U.S.C. Section 362) provides that the petition:

'. . . operates as a stay applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial action or proceeding against the Debtor that was * * * commenced before the commencement of the case under this title * * * or to recover a claim against the Debtor that arose before the commencement of the case under this title.

\* \* \* \* \* \*

(6) any act to collect, assess, or recover a claim against the Debtor that arose before the commencement of the case under this title.' "

7. Mr. Pearson states that he queried personnel at the Clerk's offices of the Bankruptcy Court and of the Superior Court regarding the effect the Suggestion of Bankruptcy had on his claim and he was advised that the Suggestion of Bankruptcy had no effect.

8. Mr. Pearson states that the Superior Court Judge stated that Debtor's Suggestion of Bankruptcy did not bar the Superior Court from determining the amount of Mr. Pearson's claim. Judgment was entered against the Debtor in the Superior Court case on April 25, 1988 in the amount of $1,652.70.

9. On April 27, 1988, Mr. Pearson secured in the Superior Court a writ of attachment on the judgment addressed to the Debtor's employer.

10. By letter of May 16, 1988, Debtor's counsel advised Mr. Pearson that the obtaining of a writ of attachment "appears to be a willful and intentional act in disregard of the applicable Bankruptcy Law." The letter further advised Mr. Pearson that if he continued to attempt to collect money from the Debtor, "I will file a motion with the Court to hold you in contempt."

11. On May 31, 1988, Mr. Pearson filed a motion in the Superior Court case to set a hearing for judgment of recovery against the Debtor's employer for failure to comply with the writ.

12. On June 14, 1988, the Debtor filed his motion for contempt. In attending the show cause hearing, the Debtor lost $30 in income he would have earned from his work. In addition, he has incurred $625 in attorney's fees for his attorney's work in attempting to convince Mr. Pearson to desist in his unlawful collection efforts and in filing and trying the motion for contempt.

## CONCLUSIONS OF LAW

1. Mr. Pearson's actions, in continuing to prosecute his civil action in the Superior Court against the Debtor, obtaining a writ of execution, and seeking to enforce that writ against the Debtor's employer, all violated the automatic stay of 11 U.S.C. Section 362(a).

2. Mr. Pearson was on notice prior to April 25, 1988, that the bankruptcy case acted as an automatic stay of certain acts and that the Debtor maintained that it acted as an automatic stay of his suit in the Superior Court and any efforts to collect on his claim through that civil action.

3. In a civil contempt proceeding it is no defense that the alleged disobedience was not willful, unlike a criminal contempt proceeding. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1949).

4. Once Mr. Pearson learned of the bankruptcy petition and that an automatic stay was in effect, his lack of formal notice

of the proceeding was irrelevant and he had a duty to ascertain the scope of the automatic stay. *Matter of DePoy*, 29 B.R. 471 (Bankr.N.D.Ind.1983); *In re Eisenberg*, 7 B.R. 683, 687 (Bankr.E.D.N.Y.1980).

■ 5. It is no defense that Mr. Pearson was misinformed by court personnel or even the Superior Court Judge of the scope of the automatic stay. *Matter of DePoy*, 29 B.R. at 476.

■ 6. While reliance on advice of counsel is not a defense to contempt, *Id.*, this Court has no doubt that competent counsel with experience in bankruptcy law experience would have informed Mr. Pearson that his acts to continue the Superior Court action and to collect on his judgment would violate the automatic stay. This is not a case where the extent of the automatic stay was so unclear that Mr. Pearson did not have fair warning what conduct was proscribed. *Compare United States v. Norton*, 717 F.2d 767, 774–75 (3rd Cir.1983) (contempt order reversed because it was not clear if retention of tax overpayments as a setoff by IRS violated the automatic stay).

■ 7. The failure of the Debtor to defend the Superior Court action after the filing of the petition herein does not estop the Debtor in this contempt proceeding; the Superior Court's judgment is void because it violated the automatic stay and hence it has no estoppel effect.

■ 8. The Debtor is entitled to recover compensatory damages of $655.00.

■ 9. Although this Court could additionally impose a coercive contempt fine against Mr. Pearson, this Court will not grant such relief at this time. However, upon further motion of the Debtor, the Court may grant further relief if Mr. Pearson fails promptly to request the Superior Court to vacate the judgment and writ of attachment he recovered and to withdraw his request for a hearing on the employer's failure to comply with the writ.