**Michael A. & Terry A. SCOTT,**
**Pro se Plaintiffs,**

v.

**WELLS FARGO HOME MORTGAGE INC., et al., Defendants.**

**No. CIV.A. 2:02–cv–789.**

United States District Court,
E.D. Virginia,
Norfolk Division.

Jan. 14, 2003.

Michael A. Scott, Virginia Beach, VA, pro se.

Terry A. Scott, Virginia Beach, VA, pro se.

Stanley G. Barr, Jr., Kaufman & Canoles, Norfolk, VA, for Defendants.

## MEMORANDUM OPINION AND ORDER

JACKSON, District Judge.

Before the Court is Plaintiffs' Motion for Partial Summary Judgment. For the reasons set forth below, Plaintiffs' motion is **DENIED** and Partial Summary Judgment for Defendants is **GRANTED** as to each claim raised in Plaintiff's Motion except for the usury claim. Because the Court finds that, after granting summary judgment on the substantive federal claims, it no longer has subject matter jurisdiction, this case is **DISMISSED WITH PREJUDICE.**

## I. FACTUAL & PROCEDURAL HISTORY

Plaintiffs are challenging two mortgages ("Mortgage 1" and "Mortgage 2") and seeking, *inter alia* rescission of both under the Truth in Lending Act, 15 U.S.C. § 1635a, *et seq.* ("TILA"). For convenience, the factual assertions relative to

each mortgage are discussed *in seriatim* below.

## A. Mortgage 1

Mortgage 1, is currently loan number 0012072963, which is held by GE Capital. Plaintiff and his wife, Terry A. Scott, (collectively, "the Scotts") assumed Mortgage 1 in 1990, under the Federal Housing Authority ("FHA") guidelines. At assumption, the Scotts' predecessor mortgagors were Mark and Cynthia Hanna and the mortgagee was Shearson Lehman Mortgage, a unit of American Express Company, and their loan number was 517128–8. This loan had a principal balance of approximately $48,233.00 and the APR was 11.5%. The Scott's refinanced the loan through Norwest Mortgage Inc. in November 1993. The mortgage was continually secured by residential real property located at 602 Zephyr Court, Virginia Beach, VA 23462 (the "Zephyr Court home"). The Scotts resided at the Zephyr Court home until May 1993. The Scotts' Note and Deed of Trust pertaining to this transaction was executed on November 29, 1993. The Note stated that the loan amount was $46,750.00 and the APR was 7.5%. The Note also stated the Scotts' monthly payment amount along with a disclosure concerning late charges (calculated as 4% of the payment amount) and escrow disclosures.

The Scotts allege, *inter alia*, that Norwest Mortgage failed to provide them with material disclosures such as the forms for rescinding the transaction and payment schedule. They now allege these same claims against GE Capital (who succeeded Shearson Lehman Mortgage as holder of his note and mortgage by paying off loan number 517128–8 with Norwest Mort-

gage). In 1999, Wells Fargo began servicing Mortgage 1 for GE Capital.

## B. Mortgage 2

Mortgage 2 is currently loan number 145024 and is held by Wells Fargo Home Mortgage Inc. The Scotts initially assumed Mortgage 2 on May 21, 1993 under Veterans Administration ("VA") guidelines. The mortgagor prior to the Scotts' assumption was Jean S. Cross. Mortgage 2 was continually secured by residential real property located at 4753 Longmont Road, Virginia Beach, VA 23456. The Scotts currently reside and have resided at this residence since May 21, 1993. There are no allegations of TILA violations concerning this transaction. The Scotts' TILA claim with respect to Mortgage 2 arises under the modification/restructuring of that obligation discussed below.

## C. The Delinquency and Restructuring

In 2001, the Scotts became delinquent on both Mortgage 1 and Mortgage 2. On October 31, 2001, Wells Fargo received a loan workout package from Plaintiffs but was unable to complete the workout due to Plaintiffs' inability to make the necessary contributions. On December 4, 2001, Wells Fargo learned that Mr. Scott filed for bankruptcy. Upon learning of the pending bankruptcy, Wells Fargo informed Plaintiffs that it would stop action on the loan workout. On March 26, 2002, the Scotts sought, and were subsequently approved for, a loan modification/restructuring with Wells Fargo as to Mortgage 1. As part of that restructuring, the Scott's monthly payments were changed, APR was adjusted to 7.5%, and the note maturity date was extended to represent a new thirty-year period.[1] The Scotts allege that

---

1. The amounts capitalized in the loan workout were limited to unpaid balance, accrued interest, and escrow payments already paid

by Wells Fargo and to be paid between the date of the loan modification/restructuring

the loan modification agreement was used to effect a scheme to manipulate, mislead and defraud him by "cleverly and deceitfully including compound interest based on . . . illegally billed late fees for the escrow payments that were concealed from Scott. . ." *See* Complaint.

On June 15, 2001, Plaintiffs submitted a workout package to Wells Fargo in an effort to modify their loan on Mortgage 2 because of delinquencies. In July 2002, Wells Fargo confirmed approval of a similar request to modify/restructure Mortgage 2.[2] As part of that restructuring, the Scotts' monthly payment was changed, APR ·adjusted to 8.5%, escrow payments were adjusted, and the note's maturity date for the loan was extended to reflect a new thirty-year period. Plaintiffs, however, allege the same scheme to manipulate, mislead and defraud as they assert with respect to the restructuring agreement for Mortgage 1, *supra.*

The Scotts allege, *inter alia,* that both Wells Fargo (concerning the two restructuring agreements) and GE Capital (concerning Mortgage 1) deliberately failed to provide them with material disclosures such as the forms for rescinding the transaction, and disclosures of the finance charge, the payment schedule, and the total of payments, which he alleges "would have afforded Scott to have a clearer picture of the construction and makeup of each transaction as well as his rights under TILA and under Code of Virginia § 6.1–422(6)." (Complaint, pp. 8–9).

On September 17, 2002, Mr. Scott mailed, by certified mail, his notice of intent to rescind Mortgage 1, pursuant to TILA, to GE Capital and Wells Fargo.

### D. The Bankruptcy Proceedings

On March 27, 2001, Mr. Scott filed a Chapter 7 Bankruptcy Petition, Case No. 01–21224–SCS, in the United States Bankruptcy Court for the Eastern District of Virginia. This case was dismissed by the Bankruptcy Court on April 26, 2001 due to Mr. Scott's failure to file required schedules. Petitioner sought and was granted relief from that judgment, but the case was later dismissed, on Scott's motion, on January 23, 2000.[3] Defendants received a copy of the dismissal order and removed Mr. Scott's file from the system on May 18, 2001, noting that the Mr. Scott's bankruptcy case was dismissed as of April 26, 2001. Affidavit of Donna Lane, ¶ 3. From April 26, 2001, through October 26, 2001, Defendants did not have notice that Mr. Scott was engaged in bankruptcy proceedings. Id.

### E. District Court Proceedings

Mr. Scott filed a Complaint[4] in this Court on October 4, 2002, alleging statuto-

---

and first payment under the modification plan. Affidavit of Dianne Singletary.

**2.** Following conversations between Plaintiffs and Wells Fargo on June 26 and 28, 2001, in which Wells Fargo requested further information and explained to Plaintiffs the details concerning the amounts capitalized under the restructuring/modification of Mortgage 2, Wells Fargo mailed Plaintiffs the complete Modification Agreement for Mortgage 2. This modification/restructuring agreement did not include any further extension of credit beyond amounts already accrued; specifically, accrued interest and escrow payments. Modifi-

cation Agreement of Mortgage 2; Affidavit of Donna Lane.

**3.** On May 15, 2001, Mr. Scott filed a motion to vacate the dismissal order. On June 21, 2001, the Bankruptcy Court held a hearing on Mr. Scotts motion. On October 26, 2001, the Bankruptcy Court entered a written order granting the motion to vacate and vacated the dismissal order.

**4.** Though the pleading is titled "CIVIL COMPLAINT AND DEMAND FOR JURY TRIAL," there is no jury demand in the

ry violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1635(a), the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, The Sherman Act, 15 U.S.C. § 1, *et seq.*, the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, the Bankruptcy Code, 11 U.S.C. 362(h); VA. CODE § 6.1–422(6), the Virginia Consumer Protection Act ("VCPA"), VA. CODE, § 6–1330, *et seq.*, and VA. CODE § 8.01–2221. The Complaint also asserts common law claims of Breach of Contract, Tortious Interference, Breach of Fiduciary Duty and Trust, Trover, Conversion, Actual and/or Constructive Fraud, Deceit, and Misrepresentation. Mr. Scott also demands rescission of two real property mortgages on his two homes, monetary damages and injunctive relief.

On October 21, 2002, Mr. Scott prematurely filed a Motion for Partial Summary Judgment and a separate Motion for Emergency Injunction (which the Court construed as a motion for preliminary injunction). On November 1, 2002, Defendants filed their Memorandum in Opposition to Emergency Injunction, and on November 4, 2002, Defendants moved to dismiss Mr. Scott's Motion for Emergency Injunction and to join Mr. Scott's wife as an indispensable party. On November 8, 2002, Mr. Scott filed his reply. On November 12, 2002, the Court heard oral arguments on Plaintiff's Motion for Emergency Injunction. During the hearing, the Court conducted an inquiry concerning the availability of legal remedies. After determining that Mr. Scott was not

likely to succeed on the merits, and that Mr. Scott had an adequate remedy at law in the event he prevails, the Court denied Mr. Scott's request for injunctive relief. The Court also ordered Mrs. Terry A. Scott joined as a necessary and indispensable party. The Court, on Mr. Scott's request, also accepted the prematurely filed Motion for Partial Summary Judgment as filed as of the date of the hearing and ordered Defendants' reply within 10 days. Defendants filed their reply on November 25, 2002. On November 29, 2002, Plaintiffs filed their reply. On December 3, 2002, Plaintiffs filed their Amended Complaint. On December 11, 2002, Plaintiffs moved for entry of a default judgment against all defendants. In a prior Order issued today, this Court denied Plaintiffs leave to file their Amended Complaint and denied Plaintiffs' Motion for Default Judgment.

## II. LEGAL STANDARD

Rule 56(c) provides for summary judgment if the Court, viewing the record as a whole, determines "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In deciding a motion for summary judgment, the Court must view the facts and inferences to be drawn from the facts in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574,

pleading. Instead, the Complaint states: COMES NOW plaintiff Michael A. Scott, proceeding *pro se*, to move this Honorable Court to enter judgment against each defendant for the monetary, statutory, declaratory and injunctive relief stated below for their *continuous, egregious and willful violations* of the laws of the United States of America and of the Commonwealth of Virginia."

Complaint p. 2. The body of complaint is filled with factual allegations and concludes with a demand for relief, which does not include or mention a jury trial. Nevertheless, because *pro se* pleaders are held to a less stringent standard than professional attorneys, and the right to jury trial is significant, the Court construes the title of the Complaint as a jury demand.

587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). To defeat summary judgment, the nonmoving party must go beyond the pleadings with affidavits, depositions, interrogatories, or other evidence to show that there is in fact a genuine issue for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. 2548.

Rule 56(B) of the Local Rules of the United States District Court for the Eastern District of Virginia requires that a motion for summary judgment include a list of undisputed facts. "A brief in response to such motion shall include a specifically captioned section listing all material facts as to which it is contented that there exists a genuine issue necessary to be litigated and citing the parts of the record relied on to support the facts alleged to be in dispute." The Court assumes that any facts alleged in the motion for summary judgment are admitted unless controverted by the responding opposition brief. The facts indicated above, unless otherwise noted, were admitted by Plaintiff because the affidavits offered by Plaintiff and referred to in his brief did not offer evidence contradicting the statements by Defendant. Pursuant to Rule 56(B) of the Local Rules, the Court accepts those facts not disputed to be admitted and also assumes those facts not disputed specifically by the referenced affidavit as admitted by Plaintiff.

5. Rule 56 mandates entry of summary judgment against a party who "after adequate time for discovery and upon motion .... fails to make a showing sufficient to establish the

## III. DISCUSSION

Plaintiffs' Motion for Partial Summary Judgment was prematurely filed. Nevertheless, in the interests of fairness and leniency toward *pro se* parties, the Court accepted Plaintiff's Motion for Partial Summary Judgment and ordered Defendants to respond. Plaintiffs' move for partial summary judgment on their claims under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1635(a), the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.,* the Bankruptcy Code, 11 U.S.C. 362(h); and Usury under Virginia law. Plaintiffs' have not, however, established that they are entitled to judgment as a matter of law. From the record and pleadings, it is apparent that no genuine issue of material fact exists as to the claims addressed in the motion for partial summary judgment. Summary judgment in favor of Defendants, therefore, is appropriate. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.[5]

### A. Truth in Lending Act Claim

Plaintiffs' claim that Defendants violated the TILA by failing to provide certain disclosures required under Regulation Z, 12 C.F.R. § 226.23, *et seq.* Defendants argue that Plaintiffs' TILA claims must fail with respect to both mortgages because they complied with the statutory and regulatory requirements. Specifically, Defendants claim that Mortgage 1 is exempted by statute because it is not secured by Plaintiffs' "principal dwelling"; that Mortgage 2 is exempted as a "residential mortgage transaction"; and that the restructuring/modification agreements are also exempt because they were not "refinancing agreements."

existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

According, to Defendants, Mortgage 1 is not subject to rescission because it is not secured by an interest in the "principal dwelling of the person to whom credit is extended." 15 U.S.C. § 1635(a). In *Scott v. Long Island Savings Bank*, 937 F.2d 738 (2d Cir.1991), the United States Court of Appeals for the Second Circuit ("Second Circuit") interpreted the "principal dwelling" requirement of TILA and stated:

> We have been unable to find any case addressing the issue whether a particular residence was a borrower's "principal dwelling" within the meaning of section 1635(a). However, the Board of Governors of the Federal Reserve System has issued Regulation Z to implement the TILA, see 12 C.F.R. § 226.1 (1991), et seq., and id. § 226.23(a) reiterates the "principal dwelling" requirement of section 1635(a). An official staff interpretation of this provision by the Board's Division of Consumer and Community Affairs, see 12 C.F.R. Pt. 226, App. C (1991), states: "A consumer can only have one principal dwelling at a time. A vacation or other second home would not be a principal dwelling." See 12 C.F.R. Pt. 226, Supp. I, at 392 (1991).

*Scott*, 937 F.2d at 741. In *Scott*, the Second Circuit concluded that given the very temporary nature of the plaintiff's stay at the Property, it was at best his "vacation or second home," not his section 1635(a) "principal dwelling." *Id.* The Second Circuit addressed the principal dwelling requirement based upon the status of the property at the time of the mortgage. *Id.* It is undisputed that the Scott's resided at the Zephyr Court home until May 1993. Consequently, Defendant's argument that the Zephyr Court home is not the Scotts' principal dwelling is incorrect. At the time of the mortgage. transaction, the property subject to Mortgage 1, 602 Zephyr Place, was the Scotts' principal dwelling. ·

■ Mortgage 2, however, is exempt from TILA's right of rescission because it is ·was a "residential mortgage transaction." Under Regulation Z, "[t]he right to rescind does not apply to . . . (1) A residential mortgage transaction . . . [and] (2) a refinancing or consolidation by the same creditor of an extension of credit already secured by the consumer's principal dwelling . . . ." 12 C.F.R. § 226.23(f)(1) and (2). "Residential mortgage" transaction means a transaction in which a ·mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained in the consumer's principal dwelling to finance the acquisition or initial construction of that dwelling. 12 C.F.R. § 226.2(a)(24).[6] The original mortgages meet this definition since those transactions occurred to "finance the acquisition" of the dwelling. *Id.*

■ As discussed below, however, the original mortgages (both Mortgage 1 and Mortgage 2) were taken in 1990 and 1993, respectively, and, thus, do not fall within the three-year limitations period provided by § 1635(a). Additionally, the restructuring/modification agreements are exempt from rescission as a "refinancing or consolidation by the same creditor of an extension of credit already secured by the consumer's principal dwelling." 12 C.F.R. § 226.23(f)(2). Also, the restructur-

---

**6.** The Comments to this definition state that the following transaction is considered an exempted "residential mortgage transaction": "[W]here a buyer enters into a written agreement with the creditor holding the seller's mortgage, allowing the buyer to assume the mortgage, if the buyer had previously purchased the property and agreed with the seller to make the mortgage payments . . . ." 12 C.F.R. Pt. 226, Supp. I at 336. It is undisputed that Scott assumed Mortgage 1 in 1990 from the sellers.

ing/modification agreements are exempt from TILA's disclosure requirements, otherwise applicable to refinancing agreements, because those agreements resulted only in a change in payment schedule as a result of the Scotts' default or delinquency. 12 C.F.R. § 226.20(a)(4).

First, Plaintiffs' TILA claim is without merit with respect to both mortgages because Plaintiffs' right of rescission has expired. Because the property is not in foreclosure,[7] Plaintiff's sole right of rescission is found in § 1635(a). Under § 1635(a), "the obligor shall have the right to rescind the transaction *until midnight of the third business day following the consummation of the transaction* or the delivery of the information and rescission forms required under the section ....whichever is later...." 15 U.S.C. § 1635(a) (emphasis added).[8] Mortgage 1 was initially assumed in 1990 and Mortgage 2 in 1993. The restructuring transactions were approved in March and July of 2002. The Scotts' Notice of Intent to Rescind was given to Wells Fargo and GE Capital on September 17, 2002, which is well beyond the "third business day following the consummation of the transaction." 15 U.S.C. § 1635(a).

Since the Scotts are alleging that GE Capital and Wells Fargo failed to provide them with the requisite notices, they must rely upon the "delivery of the information and rescission forms" clause of § 1635(a). In any event, § 1635(f) provides, in relevant part, that

"[a]n obligors right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor..."

15 U.S.C. § 1635(f). As discussed above, the restructuring/modification agreements are exempted from TILA's rescission provisions, and because the restructuring/modification did not result in a "refinancing" as defined by Regulation Z, those transactions are also exempted from the disclosure requirements. With respect to the original mortgages (Mortgage 1 is the only original transaction being challenged) the right of rescission has expired since Mortgage 1 was assumed in 1990 and refinanced in 1993. The Scotts' notice of intent to rescind was not mailed to GE Capital until September 17, 2002, which is well beyond the three-year limitations period provided by statute. 15 U.S.C. § 1635(f)

Second, Regulation Z provides, in relevant part, that the following transaction is exempt from rescission: A change in the payment schedule or a change in collateral requirements as a result of the consumer's default or delinquency, unless the rate is increased, or the new amount financed exceeds the unpaid balance plus earned finance charge and premiums for continuation of insurance of the types described in 12 C.F.R. § 226.4(d). *Id.* The Scotts' sought restructuring/modification of both mortgages because they were delinquent and, therefore, in default. Complaint p. 6, ¶ 2. The restructuring/modification resulted in a change in payment schedule and an adjustment in APR (based on the pleadings, it appears that both APRs were

---

7. Both parties agreed on the record at the November 12, 2002 Injunction Hearing that no foreclosure proceedings were imminent.

8. Regulation Z provides that "[i]f the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first."

decreased). Finally, Plaintiffs have not alleged that the "new amount financed exceeds the unpaid balance plus earned finance charge .…" *See* 12 C.F.R. § 226.4(d) Accordingly, the restructuring/modification of both mortgages is exempt. Accordingly, the Scotts' TILA claims against both Wells Fargo and GE Capital are without merit.

## B. Fair Debt Collection Practices Act Claim

Plaintiffs' allege that both Wells Fargo and GE Capital violated the FDCPA, specifically 15 U.S.C. §§ 1692d, 1692e, and 1692f. Section 1692a(6), however, limits application of the FDCPA to "debt collectors," defined, in relevant part, as follows:

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 808(6) [15 U.S.C. § 1692f(6)] such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests. The term does not include—
>
> (A) any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor; …
>
> (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

15 U.S.C. § 1692a(6). It is well-settled that provisions of the FDCPA generally apply only to debt collectors. *Pollice v. National Tax Funding, L.P.* 225 F.3d 379 (3d Cir.2000). And, creditors are not liable under the FDCPA. *Perry v. Stewart Title Co.,* 756 F.2d 1197 (5th Cir.1985), *modified on other grounds,* 761 F.2d 237 (5th Cir.1985) (Debt collector does not include consumer's creditors, *mortgage servicing company,* or assignee of debt, as long as debt was not in default at time it was assigned). A "creditor" is "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. § 1692a(4).

In Plaintiffs' reply, they admit that "defendants may have created a disputed genuine issue of material fact by their assertion that they were not debt collectors within the meaning of FDCPA." Plaintiffs' Reply, p. 6. This is not an admission that a question of fact exists, but rather an admission that Defendants are not "debt collectors" within the meaning of the FDCPA. Plaintiffs also state in their reply that they "vigorously dispute the defendants' assertions that mortgage # 1 was not delinquent in 1999 when Wells Fargo began servicing it for GE Capital, and that mortgage # 2 was not delinquent

when Wells Fargo became its mortgagee." *Id.* at. 7. Plaintiffs' Complaint, however, states that they became delinquent on Mortgage # 1 and Mortgage # 2 in 2001 and requested from Wells Fargo an agreement to modify/restructure the loans. Complaint, p 6 ¶ 2. Plaintiffs' averments in the Complaint notwithstanding, the law is well-settled (as discussed above) that creditors, *mortgagors,* and *mortgage servicing companies* are not debt collectors and are statutorily exempt from liability under the FDCPA. Summary judgment for Defendants on this issue, therefore, is appropriate. *Howe v. Reader's Digest Ass'n,* 686 F.Supp. 461 (S.D.N.Y.1988) (Summary judgment for Defendant dismissing consumer's claim that magazine violated FDCPA where creditor magazine is not debt collector under 15 U.S.C. § 1692a and did not participate in collection activity.)

## C. Violation of Bankruptcy Court's Automatic Stay Claim

Plaintiffs allege that Defendants attempts to enforce the mortgages violated the automatic stay created by Mr. Scott's bankruptcy petition. Defendants deny any willful violation of the automatic stay and argue that they did not have knowledge of Mr. Scott's bankruptcy proceedings when they allegedly violated the automatic stay.

The Bankruptcy Code creates an automatic stay as of the debtor's filing of a petition for bankruptcy protection with the Bankruptcy Court. 11 U.S.C. § 362(a).[9] Section 362(h) confers a right of action on injured persons only against those who willfully violate the automatic stay. Section 362(h) provides that "[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h).

All violations of an automatic stay, however, do not trigger 11 U.S.C. § 362(h)'s remedy provisions, but rather, "willful" violation must be shown. Willful conduct refers to deliberateness of conduct and knowledge of bankruptcy filing, not to specific intent to violate court order. *In re Aponte,* 82 B.R. 738, (Bankr.E.D.Pa.1988). Given the procedural history of Mr. Scott's bankruptcy case,[10] particularly the dismissal, reinstatement, and second dismissal,

---

9. (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970 operates as a stay, applicable to all entities, of—
(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;
(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;
(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;
(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and
(8) the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor.

10. On March 27, 2001, Scott filed a Chapter 7 Bankruptcy Petition, Case No. 01–21224–SCS, in the United States Bankruptcy Court for the Eastern District of Virginia. This case

along with the affidavits and pleadings before the Court, there is no genuine issue of material fact as to whether Defendants willfully violated the automatic stay during the times when it was actually in force. In fact, the only factual dispute between the parties concerns a telephone call Dianne Singletary allegedly made, which she denies in her affidavit.

■ In any event, it is doubtful that a violation of § 362(h) is cognizable in this Court. While § 362(h) arguably creates private right of action for willful violation of automatic stay, *Pettitt v. Baker,* 876 F.2d 456 (5th Cir.1989), 11 U.S.C. §§ 362 does not create a private cause of action outside of the Bankruptcy Court for violations of automatic stay. *Dashner v. Cate* 65 B.R. 492 (N.D.Iowa.1986).[11] Accordingly, this Court is persuaded by the reasoning of *Dashner* and the decision upon which it relies, and is mindful of the Supreme Court's warning that, the judiciary may not, in the face of such comprehensive legislative schemes, fashion new remedies that might upset carefully considered legislative programs. *Northwest Airlines v. Transport Workers,* 451 U.S. 77, 97, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981). Accordingly, this Court declines to enforce any alleged violation of a bankruptcy stay, even if Plaintiffs' could prevail on the issue. Summary judgment in favor of Defendants on this claim is, therefore, appropriate.

## D. Subject Matter Jurisdiction

■ The Court must raise issues of subject matter jurisdiction *sua sponte* if it appears at any time that further exercise of Court's jurisdiction may be improper. *See e.g., Andrus v. Charlestone Stone Products Co.,* 436 U.S. 604, 608, 98 S.Ct. 2002, 56 L.Ed.2d 570 (1978). Plaintiffs' Complaint pleaded federal question "arising under" jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367.[12] The existence of subject matter jurisdiction is determined under the "well pleaded complaint rule." *Gully v. First National Bank,* 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936) (Cardozo, J.). To establish federal question jurisdiction, Plaintiffs' bear the burden of demonstrating that a substantial question of federal law is raised by their complaint. A mere allegation that a federal statute has been violated is not sufficient. *See e.g., Mulcahey v. Columbia Organic Chems. Co.,* 29 F.3d 148 (4th Cir.1994). When a federal claim is merely one of several alternative theories of recovery, "arising under" jurisdiction does not exist. *Mulcahey,* 29 F.3d at 154

was dismissed on April 26, 2001 for failure to file required schedules. Mr. Scott sought and was granted relief from that judgment, but the case was later dismissed, on Mr. Scott's motion, on January 23, 2002.

**11.** The Iowa Bankruptcy Court noted: Nothing in the legislative history or the statute's language indicates a congressional intent to create a private cause of action. The legislative history *does* reveal that Congress intended to provide the Bankruptcy Court with the power to enforce the automatic stay. *In re Stacy,* 21 B.R. 49, 52 (Bankr.W.D.Va.1982). Also, nothing in the legislative history of the 1984 amendments indicates that Congress intended to create a private right of action outside of bankruptcy court. At least two

other courts have determined that §§ 362 does not create such a right. *In re Stacy,* supra at 53; *Matter of Thacker,* 24 B.R. 835, 838 (1982).

**12.** 28 U.S.C. § 1367(c) provides: The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district, court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

720

(citing *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 810, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988)[13] ("a claim supported by alternative theories in the complaint may not form the basis for [federal question jurisdiction] unless [federal law] is essential to each of those theories.")) As the Fourth Circuit observed, "*Christianson* teaches us that, if a claim is supported not only by a theory establishing federal subject matter jurisdiction but also by an alternative theory which would not establish such jurisdiction, then federal subject matter jurisdiction does not exist." *Id.* Therefore, having granted summary judgment against Plaintiffs' on several of Plaintiffs' federal claims, the Court finds that the remaining claims asserted in Plaintiffs' complaint do not raise a substantial question of federal law and are supported by alternative state law theories of recovery.[14] The Court, finds *sua sponte* that it lacks subject matter jurisdiction to entertain this suit any further and, the Court declines to exercise supplemental jurisdiction on those same grounds. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Accordingly, the Court need not address Plaintiffs' Motion for Partial Summary Judgment with regard to the Virginia usury claim, and the remainder of this action is ***DISMISSED with prejudice.***

Plaintiff is ***CAUTIONED*** that the Court's dismissal of this action with prejudice is a final decision on the merits, for the doctrine of *res judicata* bars any further prosecution of this action or any new case arising out of the same transaction or occurrence, or common nucleus of operative facts as those asserted herein.

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Partial Summary Judgment is ***DENIED.*** Partial Summary Judgment is granted in favor of Defendants' with respect to the TILA, FDCPA, and the violation of Bankruptcy Stay claims. The remainder of this case is ***DISMISSED with prejudice.***

The Clerk is ***DIRECTED*** to send a copy of the Order to the parties.

IT IS SO ***ORDERED.***

---

**13.** In *Christianson,* the Court was faced with determining whether a claim was one "arising under" any Act of Congress relating to patents" for purposes of federal subject matter jurisdiction pursuant to 28 U.S.C. § 1338(a). The Court noted that resolution of this question was governed by the same principles applicable in determining "arising under" jurisdiction for § 1331 purposes. The petitioners' complaint stated that the respondent's patents were invalid so that the petitioners were entitled to use certain trade secrets, and that the respondents' efforts to prevent such use violated antitrust laws. In *Christianson,* Petitioners' antitrust count encompassed both a monopolization claim under § 2 of the Sherman Act and a group-boycott claim under § 1 of the Sherman Act. The Supreme Court noted that the patent law issue was only essential to one of several theories under which the petitioner could prove its monopolization claim or its group-boycott claim. Finding that the case did not "arise under" federal patent law, the Supreme Court held that "a claim supported by alternative theories in the complaint may not form the basis for [§ 1331] jurisdiction unless [federal] law is essential to each of those theories." *Christianson,* at 810, 108 S.Ct. 2166.

**14.** Plaintiffs' remaining federal law claims include violations of the Sherman Act and RICO. Neither of these federal statutory schemes were intended to address claims affecting only two parties. Nevertheless, they present only alternate theories of recovery in addition to Plaintiffs' state law claims of usury, consumer protection, trover, conversion, fraud, deceit, misrepresentation and the like.