[Cite as *Wells Fargo Bank, N.A. v. Gerst*, 2014-Ohio-80.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| WELLS FARGO BANK, N.A. | JUDGES:<br>Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | Hon. Patricia A. Delaney, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | Case No. 13 CAE 05 0042 |
| BRANDON M. GERST, ET AL. | |
| Defendants-Appellants | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Delaware County Court of Common Pleas, Case No. 10 CVE 09 1390

JUDGMENT:      Affirmed in part; Reversed in part, and Remanded

DATE OF JUDGMENT ENTRY:      January 9, 2014

APPEARANCES:

For Plaintiff-Appellee          For Defendants-Appellants

SCOTT A. KING          TROY J. DOUCET
JESSICA E. SALISBURY          Doucet & Associates, Inc.
Thompson Hine LLP          4200 Regent Street, Suite 200
Austin Landing I          Columbus, Ohio 43219
10050 Innovation Drive, Suite 400
Miamisburg, Ohio 45342

*Hoffman, P.J.*

{¶1} Defendants-appellants Brandon M. Gerst and Jessica M. Gerst appeal the April 15, 2013 Judgment Entry and Decree of Foreclosure entered by the Delaware County Court of Common Pleas. Plaintiff-appellee is Wells Fargo Bank, N. A.

STATEMENT OF THE FACTS AND CASE

{¶2} On November 15, 2006, Appellants executed a Note in favor of Centennial Home Mortgage ("Centennial") to finance the purchase of real property located at 135 Arrowfeather Lane, Lewis Center, Ohio. Appellants also executed a Mortgage against the property in favor of Centennial. Centennial assigned the Mortgage and the Note to Appellee on November 15, 2006. The Mortgage and the Note were recorded on December 19, 2006.

{¶3} From March, 2008, through September, 2008, Appellant Jessica Gerst was on a medical leave of absence from her employment, which resulted in a reduction in her income. On March 13, 2008, Appellee advised Appellants to contact the United States Department of Housing and Urban Development for homeownership counseling. Via correspondence dated June 23, 2008, Appellee notified Appellants they were in default. The correspondence further informed Appellants Appellee wished to meet with them. Appellants did not contact Appellee to schedule a meeting.

{¶4} On July 9, 2008, Appellants contacted Appellee, requesting a moratorium on their payments. Appellee declined to grant Appellants' request. Appellants executed a Special Forebearance Agreement under which they agreed to cure the default by making three monthly payments of $1551.21 on October 15, 2008, November 15, 2008, and December 15, 2008, as well as a payment of $9729.56 by January 15, 2009.

Appellants failed to make the January, 2009 payment.  Appellee subsequently offered Appellants a Loan Modification Agreement, which modified the principal balance, lowered the interest rate, and lower the monthly payments.  Appellants executed the modification agreement but ultimately again fell behind on their monthly payments.

**{¶5}** Appellant Jessica Gerst contacted Appellee, and was advised regarding the documents required to determine Appellants' eligibility for foreclosure alternatives. The documents revealed Appellants monthly income was consistently $400 less than their monthly expenses.

**{¶6}** On May 3, 2009, Appellee once again informed Appellants they were in default, and the payment necessary to cure the default and avoid acceleration and foreclosure.  In a correspondence dated May 10, 2009, Appellee outlined the alternatives to foreclosure.  Appellee enclosed a pamphlet titled, "How to Avoid Foreclosure" with the May 10, 2009 correspondence.  Thereafter, Appellants sent additional financial information to Appellee.  Some of this information proved to be inaccurate. Appellee sent Appellants a correspondence dated May 29, 2009, in which Appellee warned Appellants they were in default, and requested a meeting to review their financial situation and determine possible ways to cure the default.  Appellants did not contact Appellee to schedule a meeting.

**{¶7}** Although Appellants continued to pursue a second loan modification, once Appellee offered such, Appellants initially refused to accept it.  Appellants eventually executed the second loan modification in late November, 2009.  By May, 2010, Appellants had again fallen behind in their mortgage payments and again requested another loan modification.  On June 6, 2010, Appellee advised Appellants of their

default and the payment necessary to avoid acceleration and foreclosure. A week later, Appellee informed Appellants of loss mitigation programs that might be available and again enclosed the "How to Avoid Foreclosure" pamphlet. The parties communicated regarding loss mitigation programs and the documents necessary to prove eligibility for foreclosure alternatives. Appellee sent a correspondence dated July 15, 2010, after it was unable to reach Appellants by telephone, regarding the past due loan. The correspondence expressly stated, "It is urgent that you contact us when you receive this letter to discuss payment of your past loan installment(s)."

{¶8} After Appellants failed to bring their account current, Appellee accelerated the balance due on the Note, and filed its complaint for foreclosure on September 22, 2010. A copy of the Note was not attached to the complaint, but trial counsel explained the Note held by Appellee had been lost, misplaced, or destroyed, and it would file a Lost Note Affidavit if a copy could not be located prior to judgment and if the court so required.

{¶9} Appellants filed an answer and counterclaim. In their answer, Appellants alleged Appellee failed to comply with HUD's face-to-face meeting requirement which is a condition precedent to foreclosure. The counterclaim asserted violations of the Truth in Lending Act ("TILA"), the Consumer Sales Practices Act ("CSPA"), the Real Estate Settlement Procedures Act ("RESPA"), the Fair Debt Collections Practices Act ("FDCPA"), the Ohio Mortgage Broker Act ("OMBA"), and the Equal Credit Opportunity Act ("ECOA"), as well as fraud, negligence, breach of contract and estoppels, and breach of good faith and fair dealing. Appellee filed a motion to dismiss the counterclaim on July 18, 2011. Appellee attached to the motion a copy of the Note

payable to Centennial, dated November 15, 2006, executed by Appellants, and endorsed payable to Appellee. Appellee filed a motion for summary judgment on September 25, 2012.

{¶10} Via Judgment Entry filed November 5, 2012, the trial court dismissed Appellants' OMBA claim in addition to any claim Appellants attempted to assert based upon an alleged breach of fiduciary duty. The trial court deferred ruling on the remaining claims until after full summary judgment briefing.

{¶11} On November 6, 2012, Appellants filed a motion to dismiss the complaint. Appellants filed a memorandum in opposition to Appellee's motion for summary judgment on November 30, 2012. Appellants argued the trial court should not grant summary judgment in favor of Appellee on their CSPA counterclaims as a mortgage servicer falls within the definition of supplier under the CSPA. Appellants further asserted Appellee failed to comply with HUD's face-to-face meeting requirement, which is a condition precedent to foreclosure.

{¶12} In its reply, Appellee countered the face-to-face meeting requirement could not preclude judgment granting foreclosure as a mortgagee's failure to comply with the requirement is an affirmative defense, not a condition precedent, and Appellants failed to present any evidence to support the applicability of the defense in the matter.

{¶13} Via judgment entry filed April 2, 2013, the trial court denied Appellants' motion to dismiss, and granted Appellee's motion for summary judgment. The trial court issued a judgment entry and decree of foreclosure on April 15, 2013.

{¶14} It is from these judgment entries Appellants appeal, raising the following assignments of error:

{¶15} "I. THE TRIAL COURT ERRED WHEN IT ENTERED SUMMARY JUDGMENT IN WELLS FARGO'S FAVOR ON ITS CLAIMS.

{¶16} "II. THE TRIAL COURT ERRED WHEN IT ENTERED SUMMARY JUDGMENT IN WELLS FARGO'S FAVOR ON THE GERSTS' COUNTERCLAIM ALLEGING A VIOLATION OF THE FDCPA.

{¶17} "III. THE TRIAL COURT ERRED WHEN IT DENIED THE GERSTS' MOTION TO DISMISS THE COMPLAINT."

I

{¶18} In their first assignment of error, Appellants contend the trial court erred in granting summary judgment in favor of Appellee. Specifically, Appellants submit Appellee did not comply with all conditions precedent to foreclosure, including the requirement to conduct a face-to-face interview. Appellants further assert Appellee did not establish it was excused from doing so.

{¶19} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 36, 506 N.E.2d 212. As such, this Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241.

{¶20} Civ.R. 56 provides summary judgment may be granted only after the trial court determines: 1) no genuine issues as to any material fact remain to be litigated; 2) the moving party is entitled to judgment as a matter of law; and 3) it appears from the

evidence that reasonable minds can come to but one conclusion and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 364 N.E.2d 267.

{¶21} It is well established the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. *Celotex Corp. v. Catrett* (1987), 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265. The standard for granting summary judgment is delineated in *Dresher v. Burt* (1996), 75 Ohio St.3d 280 at 293, 662 N.E.2d 264: " * * * a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." The record on

summary judgment must be viewed in the light most favorable to the opposing party. *Williams v. First United Church of Christ* (1974), 37 Ohio St.2d 150, 309 N.E.2d 924.

**{¶22}** Section 203.602, Title 24, C.F.R. 203, governs the instant action. The regulation requires a "face-to-face" interview between a mortgagor and mortgagee before three full monthly installments on the mortgage are unpaid, and provides as follows:

(b) The mortgagee *must have a face-to-face interview* with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid. * * *

(c) A face-to-face meeting is *not required if*:

(1) The mortgagor does not reside in the mortgaged property,

(2) The mortgaged property is not within 200 miles of the mortgagee, its servicer, or a branch office of either,

(3) The mortgagor has clearly indicated that he will not cooperate in the interview,

(4) A repayment plan consistent with the mortgagor's circumstances is entered into ** *

(5) A reasonable effort to arrange a meeting is unsuccessful.

(d) *A reasonable effort to arrange a face-to-face meeting with the mortgagor shall consist at a minimum of one letter sent to the mortgagor certified by the Postal Service* as having been dispatched. Such a reasonable effort to arrange a face-to-face meeting *shall also include at least one trip to see the mortgagor at the mortgaged property, unless the*

*mortgaged property is more than 200 miles from the mortgagee, its*

*servicer, or a branch office of either,* or it is known that the mortgagor is

not residing in the mortgaged property. (Emphasis added).

**{¶23}** In *U.S. Bank, N.A. v. Detweiler,* 191 Ohio App.3d 464, 2010 -Ohio- 6408, this Court found the mortgage loan at issue was federally insured and subject to HUD regulations in the case of default or acceleration, and the HUD regulations, incorporated within the terms of the default or acceleration provisions, which include those requirements found in Sections 203.602 and 203.604, Title 24, C.F.R. were conditions precedent to foreclosure. *Id.* Appellant requests we revisit *Detweiler* and now find the face-to-face requirement is not a condition precedent but rather in the nature of an affirmative defense. Upon revisit, we adhere to *Detweiler*.

**{¶24}** Appellee has failed to establish it complied with the regulation that it have a face-to-face interview with Appellants, or made a reasonable effort to arrange the interview, before bringing the foreclosure action. Further, the letters sent to Appellants on June 23, 2008, and May 29, 2009, cannot be used to demonstrate even minimal compliance with Section 203.604, Title 24, C.F.R., because subsection (d) of that rule prescribes a certified letter as the minimum requirement for a reasonable effort to arrange a face-to-face meeting. There is no evidence to show those letters were sent to Appellants by certified mail, and the letters do not contain any language purporting to arrange a face-to-face meeting. See *CitiMortgage, Inc. v. Ferguson,* Fairfield App. No. 2006CA00051, 2008-Ohio-556, 2008 WL 376380 (failure to provide documentary evidence that notice of default and acceleration was sent by certified mail as required by the terms of the mortgage prevented summary judgment in favor of mortgagee).

**{¶25}** Accordingly, we find there is a genuine issue of material fact whether Appellee complied with the conditions precedent prior to initiating the foreclosure proceedings. As such, in accordance with *Detweiler,* we reverse the judgment of the Delaware County Court of Common Pleas and remand the matter to the trial court for further proceedings in accordance with the law.

**{¶26}** Appellants' first assignment of error is sustained.[1]

II

**{¶27}** In their second assignment of error, Appellants argue the trial court erred in denying summary judgment in their favor on the FDCPA.

**{¶28}** The purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors," as distinguished from creditors. 15 U.S.C. 1692. A debt collector refers to "any business the principle purpose of which is the collection of any debts * * *." A creditor, on the other hand, refers to an entity that "offers or extends credit creating a debt or to whom a debt is owed."

**{¶29}** It is well established creditors and mortgage service companies are not debt collectors and are not subject to liability under the FDCPA. *RBS Citizens, N.A. v. Zigdon*, 8th Dist. No. 93945, 2010-Ohio-3511, citing *Scott v. Wells Fargo Home Mtge. Inc.* (2003), 326 F.Supp.2d 709. See, also, *Montgomery v. Huntington Bank* (C.A.6 2003), 346 F.3d 693, 699.

**{¶30}** Appellants' second assignment of error is overruled.

---

[1] Appellee does not specifically argue in its brief it satisfied exception (C)(4) of the face-to-face requirement by entering into the Special Forbearance Agreement and/or the subsequent Loan Modification Agreement(s) nor that it satisfied exception (C)(5) by making a reasonable effort to arrange a "face-to-face" meeting.

III

{¶31} In their final assignment of error, Appellants maintain the trial court erred in denying their motion to dismiss the complaint. Appellants assert the trial court erred in finding Appellee had standing based upon the assignment of the Mortgage which also purported to assign the Note. Appellants add Appellee failed to demonstrate it could enforce the Note when it filed the action.

{¶32} In *Bank of New York v. Dobbs*, 5th Dist. No. 2009-CA-00002, 2009-Ohio-4742, this Court addressed this issue, explaining:

> The Restatement asserts as its essential premise * * * that it is nearly always sensible to keep the mortgage and the [note] it secures in the hands of the same party. This is because in a practical sense separating the mortgage from the [note] destroys the efficacy of the mortgage, and the note becomes unsecured. The Restatement concedes on rare occasions a mortgagee will disassociate the [note] from the mortgage, but courts should reach this result only upon evidence that the parties to the transfer agreed. Far more commonly, the intent is to keep the rights combined * * *. Thus, *the Restatement [provides] that transfer of the [note] also transfers the mortgage and vice versa.* Section 5.4(b) [provides] "Except as otherwise required by the Uniform Commercial Code, a transfer of a mortgage also transfers the [note] the mortgage secures unless the parties to the transfer agree otherwise." *Thus, [the note] follows the mortgage if the record indicates the parties so intended. Id.* at ¶ 28 (Emphasis added.)

We further noted, "[i]n Ohio it has been held that transfer of the note implies transfer of the mortgage. * * * 'Where a note secured by a mortgage is transferred so as to vest the legal title to the note in the transferee, such transfer operates as an equitable assignment of the mortgage, even though the mortgage is not assigned or delivered.' " *Id.* at ¶ 29–30, quoting *LaSalle Bank N.A. v. Street,* 5th Dist. No. 08CA60, 2009-Ohio-1855, 2009 WL 1040300, ¶ 28. The *Dobbs* Court extended this rationale, holding *the assignment of a mortgage, without an express transfer of the note, is sufficient to transfer both the mortgage and the note, if the record indicates that the parties intended to transfer both. Id.* at ¶ 31 (Emphasis added).

{¶33} Appellants encourage us to overrule *Dobbs*. We decline to do so. The Note at issue herein was originally payable to Centennial. Centennial indorsed the Note in favor of Appellee, which indorsed the Note in blank. Appellee has been in possession of the Note since 2006. We find Appellee is the holder and the entity entitled to enforce the Note as well as the Mortgage. Accordingly, we find the trial court did not err in denying Appellants' motion to dismiss.

{¶34} Appellants' third assignment of error is overruled.

{¶35}  The judgment of the Delaware County Court of Common Pleas is affirmed in part; reversed in part, and remanded to the trial court for further proceedings in accordance with the law and this Opinion.

By: Hoffman, P.J.

Delaney, J.  and

Baldwin, J. concur